IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Shimshon Wexler,                                    )<br>                                                                )<br>           Plaintiff,                                     )<br>                                                                )<br>v.                                                              )<br>                                                                )<br>LVNV Funding, LLC; and Resurgent Capital  )<br>Services, LP,                                             )<br>                                                                )<br>           Defendants.                                )<br>                                                                ) | C.A. NO.: 6:16-cv-01492-TMC-KFM<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR THE ENTRY OF A PROTECTIVE ORDER AND IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

**I.     NATURE OF THE CASE**

Plaintiff initiated this action *pro se* asserting claims for violations of the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681 *et seq.* ("FCRA") against Defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, LP ("Resurgent").

**II.    FACTUAL BACKGROUND**

On February 27, 2008, Plaintiff entered into a credit agreement for a credit card (the "Account") with Chase Bank USA, N.A ("Chase"). On January 7, 2010, Chase received the last payment on the Account leaving a balance of $22,850.57. On July 30, 2010, Chase charged off the Account and subsequently sold the Account to a corporate affiliate of Defendants, Sherman Originator III, LLC, on March 10, 2011 pursuant to the terms and conditions of confidential and proprietary agreements between Sherman Originator III, LLC and Chase (the "Account Purchase Agreements"). Sherman Originator III, LLC transferred the Account internally to Sherman Originator, LLC, and Sherman Originator, LLC thereafter transferred the Account internally to LVNV.

On May 9, 2016, Plaintiff filed the summons and complaint against LVNV alleging that it violated certain obligations under FCRA by reporting inaccurate information to various credit reporting agencies. *See* Docket Entry ("DE") 1. Plaintiff alleges that Chase waived its right to charge interest on the Account before it was sold, thus LVNV did not acquire the right to charge interest after Chase's alleged waiver. *Id.* Plaintiff has not alleged in the complaint, the amended complaint, or the second amended complaint that LVNV does not own the Account. *See* DE 1, 17, 35.

On July 12, 2016, Plaintiff served written discovery requests upon LVNV. *See* DE 45-1. In his first requests for production of documents, Plaintiff requested the following documents:

16. Documents showing the purchase agreement for Plaintiff's account.

17. Documents showing the forward flow agreement for this account.

18. Documents that show or referenc[e] that Defendant or its affiliates has purchased this account.

19. Documents that show or reference what rights or obligations Defendant acquired when it purchased Plaintiff's account.

20. Documents that show or reference the purchase price for Plaintiff's account.

*Id*. The requests relate to the Account Purchase Agreements, which are confidential and subject to trade secrets protection.

On September 12, 2016, Plaintiff filed the second amended complaint naming Resurgent as a defendant and alleging substantially similar allegations as the previous complaints. *See* DE 35. That same day, LVNV served its answers and objections to Plaintiff's interrogatories, requests for admission, and requests for production. *See* DE 45-1. Three days later on September 19, 2016, the Court issued an order granting the parties' motion for a confidentiality order. *See* DE 40, 41.

Pursuant to the confidentiality order, LVNV produced documents responsive to Plaintiff's discovery requests on September 26, 2016.

On October 24, 2016, Plaintiff filed the instant motion to compel discovery responses. *See* DE 45. On October 28, 2016, Resurgent answered the second amended complaint. *See* DE 46.

### III.    ANALYSIS

#### A.    GOOD CAUSE EXISTS FOR THE ENTRY OF A PROTECTIVE ORDER PRECLUDING PLAINTIFF FROM SEEKING DISCOVERY REGARDING THE ACCOUNT PURCHASE AGREEMENTS

Fed. R. Civ. P. 26(c) provides that for "good cause" shown, a court may enter a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed." Fed R. Civ. P. 26(c)(1)(G). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988). In other words, the district court "must weigh the need for the information versus the harm in producing it." *A Helping Hand, LLC v. Baltimore Cty., Md.*, 295 F. Supp. 2d 585, 592 (D. Md. 2003) (quoting *Valutech*, 122 F.R.D. at 191). The district court, however, is afforded broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The United States Supreme Court has defined a "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) (quoting *Restatement of Torts* § 757, cmt. b (1939)). "On its face, the rule goes beyond trade secrets to provide protection for 'other confidential

research, development, or commercial information'" as well. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2043 (2d ed. 1994). In other words, materials do not necessarily have to reveal the "keys to a corporate kingdom" to merit confidential treatment; the rule requires only that the information at issue contain private, proprietary information. *See In re FedEx Ground Package Sys.*, 2010 U.S. Dist. LEXIS 21607, at *7 (N.D. Ind. Mar. 2, 2010) (allowing the parties to designate as "Confidential" discovery materials that were not "publicly available").

A showing of good cause requires the party resisting discovery to demonstrate that "the information sought through discovery is a trade secret and that disclosure of the secret might be harmful." *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985). If such a showing is made, "the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). If both relevancy and need have been established, the Court must balance the need for the information against the injury that would ensue if disclosure is ordered. *Coca-Cola Co.*, 107 F.R.D. at 293.

The facts here establish the existence of sensitive information and the "good cause" necessary for a protective order. First, there is ample evidence that the information sought contains trade secrets. The Account Purchase Agreements are highly confidential, commercially sensitive, and contain proprietary business information that, if disclosed, would put Defendants at a competitive disadvantage with their competitors. Specifically, the terms and conditions under which Defendants acquire accounts from debt-issuers reflect Defendants' allocation of risk between the parties that is ultimately reflected in the purchase price. Defendants have numerous competitors that also engage in a virtually identical calculation in allocating the risk of purchasing

4

written-off accounts, therefore the purchase price is a critical variable in the formula.  Where contract terms have economic value and are not generally known in the industry they may qualify as trade secrets.  *See, e.g., Delta Med. Sys. v. Mid-Am Med. Sys., Inc.,* 331 Ill. App. 3d 777, 794 (2002) (holding that contract terms with economic value that are not generally known in the industry are protectable trade secrets); *SmithKline Beecham Corp. v. Pentech Pharm., Inc.,* 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (information about terms and conditions of contracts "that might give other firms an unearned competitive advantage" is legitimately confidential information that competitors should not have).

Further, Defendants would suffer substantial harm if the Account Purchase Agreements are disclosed.  Defendants go to great lengths to keep this such information out of the hands of its competitors as such confidentiality carries great economic importance to the success of the company.  The Account Purchase Agreements are the culmination of numerous years of time and effort expended by Defendants to develop their relationships with customers and debt-issuers to hone their business strategies.  Defendants used the Account Purchase Agreements to purchase many more accounts than the Account.  Although some elements in the Account Purchase Agreements could be redacted, an expert knowledgeable of the industry could analyze the overall allocation of risk as reflected in various warranties made by the buyer and the seller, the indemnification provisions, repurchase obligations, and other provisions to draw conclusions concerning Defendants' pricing methodology.

The risk of harm is magnified in this case because Plaintiff is an attorney who routinely represents plaintiffs asserting FCRA and similar claims against entities like Defendants.  In usual circumstances, the risk of disclosing proprietary information to an adverse party may be mitigated by designating such documents as for "Attorneys' Eyes Only" to protect against corporate

competitors using confidential documents gained in discovery to their competitive advantage. However, in this case, such a designation would be futile as Plaintiff is representing himself *pro se*. By virtue of his professional experience, Plaintiff has gained extensive knowledge of Defendants and their competitors that he has used in representing clients against such entities. By representing himself in the instant matter, Plaintiff will doubtlessly garner more information to add to his arsenal in representing future clients against Defendants and their competitors. Plaintiff's use of this information would be nearly impossible to defend. Moreover, by using this knowledge even without disclosing it, Defendants' competitors may gain insight into Defendants' risk-allocation formulas.

Courts in other jurisdictions have recognized the risk of harm presented by the disclosure of similar account purchase agreements. For example, in *Hinkle v. Midland Credit Management, Inc.*, No. CV 313-033 (S.D. Ga Sept. 25, 2014), the plaintiff brought claims under the FCRA and Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") claims against three competitors of Defendants, and the defendants sought to seal documents virtually identical to the Account Purchase Agreements. The district court found that the "the content of the [account purchase agreements] satisfies [the defendants'] burden of showing good cause…because of the potential harm to their competitive standing if the information were made public." *Id.* The district court in *Reyes v. Kenosian & Miele, LLP*, 619 F.Supp.2d 796 (N.D. Cal., 2008), granted a similar motion to seal "because [the account purchase agreement] contains the confidential information of non-parties." Similar to *Reyes*, the instant case involves the confidential information of two non-parties, Chase and Sherman Originator III, LLC, contained in the Account Purchase Agreements.

Second, Plaintiff cannot meet the second prong of the analysis because the materials are not necessary and are not relevant to his claims. Plaintiff's cause of action rests upon his theory

6

that Chase validly waived its right to collect interest when it charged off the Account and subsequently sold the Account to LVNV. Although no courts in the Fourth Circuit have weighed in, numerous courts have rejected similar arguments and ruled that the original creditor's cessation of interest charges does not constitute a waiver. *See, e.g., Frost v. Resurgent Capital Services, LP*, No. 5-15-cv-03987-EJD (N.D. Cal. June 27, 2016) ("There are no factual allegations present in the complaint that state GE applied its alleged business practice of ceasing the collection of post charge-off interest to Plaintiff's debt."); *Swafford v. Unifund CCR Partners*, No. 13-c-1572 (N.D. Ill. Oct. 18. 2013) ("The complaint does not contain any allegation that specifically states that Citibank communicated to Defendants that Citibank decided not to charge interest on Swafford's account and intended to waive that right.").

Even assuming, *arguendo,* that Chase did waive its right to collect interest, the Account Purchase Agreements have no relevance regarding whether Defendants sufficiently complied with their duties under FCRA to conduct a reasonable investigation. Although Plaintiff may attempt to argue that the materials are relevant to the issue of Chase's waiver, the Account Purchase Agreements contain no language related to the charging of interest or whether Chase intended to waive certain rights by conveying a number of accounts to Sherman Originator III, LLC. Furthermore, the Account Purchase Agreements have no relevance to any other issue asserted in this matter. Plaintiff has not alleged in the complaint, the amended complaint, or the second amended complaint that he is not the correct debtor on the Account or that LVNV does not own the Account. Thus, if Plaintiff were provided the Account Purchase Agreements, they are not necessary to his claims as they are silent as to the issue of waiver.

Finally, even if Plaintiff can demonstrate that the Account Purchase Agreements are necessary and relevant to his claims, the substantial harm that would result to Defendants

7

outweighs Plaintiff's alleged need for the information. Defendants have taken great care to safeguard the information contained in the Account Purchase Agreements from any competitors or third parties. The pricing information and terms and conditions found within the agreements represent substantial time and effort on the part of Defendants to develop a strictly confidential pricing methodology that has been ardently shielded from any outside observers. If disclosed, the Account Purchase Agreements would result in severe harm to Defendants not only in economic competition but also in future litigation. Plaintiff cannot demonstrate any need or even the relevance of these documents because they are silent to the issue of waiver and have no bearing on any other relevant issue to his claims. Consequently, the absence of Plaintiff's need for the information fails to outweigh the substantial risk of harm to Defendants presented by the disclosure, and good cause exists for the entry of a protective order. Accordingly, the Court should grant Defendants' motion for a protective order preventing Plaintiff from obtaining discovery relating to the Account Purchase Agreements.

### B.    PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED

Plaintiff argues that he is entitled to an order compelling discovery responses from LVNV because he alleges that (i) LVNV's answers to interrogatories numbers 2, 12, and 13 are incomplete and insufficient under Fed R. Civ. P. 33(d); (ii) LVNV's answer to interrogatory number 14 is "evasive and incomplete;" (iii) the documents requested by requests for production numbers 6, 7, 8, 9, 13, 14, and 15 are within the possession, custody, and control of LVNV; and (iv) he is entitled to the Account Purchase Agreements implicated by requests for production numbers 16 through 20. As discussed *infra.*, Plaintiff's arguments are without merit and this Court should deny his motion to compel.

First, Plaintiff's motion to compel should be denied because it is untimely. Local Rule 37.01(a), D.S.C. requires that a motion to compel "must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed, or where no response has bene received, within twenty-one (21) days after the response was due." LVNV's responses and objections to Plaintiff's interrogatories, requires for admission, and requests for production were served September 12, 2016. *See* DE 45-1. Plaintiff's motion to compel was not filed until 42 days later on October 24, 2016, therefore Plaintiff's motion should be dismissed as untimely pursuant to Local Rule 37.01(a), D.S.C. *See* DE 45.

Second, Plaintiff claims that LVNV's answers to interrogatories numbers 2, 12, and 13 are incomplete and insufficient under Fed. R. Civ. P. 33(d). However, Plaintiff has failed to make requisite showing under Rule 33(d) that LVNV's responses are inadequate. "Although the Fourth Circuit Court of Appeals has not articulated a standard for evaluating a Rule 33(d) response, district courts in this Circuit have followed a two-step analytical framework." *Hege v. Aegon USA, LLC*, 8:10-CV-01578-GRA, 2011 WL 1119871, at *2 (D.S.C. Mar. 25, 2011). The moving party must first make a prima facie showing that a Rule 33(d) response is an inadequate means to answering the interrogatories, "whether because the information is not fully contained in the documents, is too difficult to extract, or other such reasons." *S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576-77 (M.D.N.C. 2002). If the moving party makes this showing, the burden then shifts to the producing party to justify responding under Rule 33(d) instead of directly answering the interrogatories. *Id.*

Here, Plaintiff has failed to make a prima facie showing that the information "is not fully contained in the documents, is too difficult to extract, or other such reasons." Plaintiff, who admits that LVNV produced the entire file that he requested, states only that the answers "are not contained within the file." *See* DE 45. Interrogatories numbers 2, 12, and 13 broadly request that

9

LVNV to describe all investigations regarding any account, all disputes received from any national credit reporting agency, and every actions of each employee in relation to each dispute. Reserving the appropriate objections, LVNV designated that such information regarding the Account may found in the documents it produced to Plaintiff as it is entitled to do under Rule 33(d).

Part of the documents produced to Plaintiff include a computer printout of all matters relating to the Account[1]. Defendants keep meticulous records in electronic format related to every customer's account and the investigation of all disputes, which are received from a credit reporting agency known as an automated consumer dispute verification ("ACDV"). As requested by interrogatory number 1, the printout as well as other documents produced by LVNV contain a plethora of information about Plaintiff's disputes regarding the Account, including the relevant dates, materials provided to Defendants by Plaintiff, and employee names and notations detailing their actions. As requested by interrogatories numbers 12 and 13, the printout contains every ACDV received by Defendants from any credit reporting agency relating to the Account, including the relevant dates, materials received from Plaintiff, employee notations and names, information received from the relevant credit reporting agency, and information submitted to the credit reporting agency in response to each ACDV. In light of the considerable amount of pertinent information supplied to Plaintiff, Plaintiff cannot make a prima facie showing that the materials "are not contained within the file."

Third, Plaintiff argues that LVNV's response to interrogatory number 14 is "evasive" and "incomplete." Number 14 asks for "every interest rate charge on Plaintiff's account." Again, LVNV referenced its document production as it is entitled to do under Rule 33(d). The Rule

---

[1] The computer printout materials have been marked "CONFIDENTIAL" pursuant to the Court's confidentiality order. Accordingly, such materials may only be provided solely for *in camera* review if requested by the Court or filed under seal pursuant to Local Civil Rule 5.03, D.S.C.

10

"applies to `business records' from which raw data and facts can be discovered." *Cont'l Ill. Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 687 (D. Kan. 1991). Furthermore, the Rule does not require the producing party to provide calculations based upon data ascertainable from the documents it has produced. *See Solis v. La Familia Corp.,* 10-2400-EFM-GLR, 2012 WL 1906508, at *5 (D. Kan. May 25, 2012). ("But Rule 33(d) does not require the documents to contain computations. It instead requires that the answer to the 'interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing' the produced records."). The computer printout materials produced to Plaintiff contain nearly eight pages of data clearly labeled "INTEREST ACCRUAL" with corresponding dates and amounts. Rule 33(d) does not require that LVNV expend additional time and expense to perform Plaintiff's preferred calculations because Plaintiff has the same opportunity to make an identical calculation based upon the same data.

Fourth, Plaintiff argues that the documents requested by requests for production numbers 6, 7, 8, 9, 13, 14, and 15 are within the possession, custody, and control of LVNV. Generally, these requests seek either LVNV's policies and procedures or training documents for LVNV employees. LVNV has no employees, policies, or procedures, thus LVNV cannot produce a document that are not within its possession, custody, or control. However, Plaintiff also argues that LVNV should have produced documents relating to Resurgent's policies and training documents. Notably, Plaintiff's requests explicitly seek "defendant's policies or procedures for collection debts;" "any records stating…destruction of records policy of defendant;" "documents which address…Defendant's policy to add interest;" and other similar references. *See* DE 45-1 (emphasis added). At the time these discovery requests were served, LVNV was the only

11

defendant, thus no documents maintained by Resurgent were implicated by Plaintiff's requests. Plaintiff has every right to serve valid discovery requests under Rules 33 and 34 upon Resurgent.

Finally, Plaintiff argues that LVNV must produce the Account Purchase Agreements implicated by requests for production numbers 16 through 20. As this point has been extensively argued discussed above, *supra.* at 3-8, Defendants need only reiterate that such documents are confidential and subject to trade secrets protection. The terms and conditions under which Sherman Originator III, LLC purchases accounts from Chase bear no relevance to this matter, and the disclosure of these documents would only harm Defendants as they cannot protect against such information being used against them in future suits brought by Plaintiff's clients.

Even if Plaintiff could make the requisite prima facie showing that LVNV's Rule 33(d) responses were inadequate, LVNV is justified in responding under Rule 33(d) instead of directly answer the interrogatories. "To prove justification, the producing party must do four things: (1) specify for each interrogatory the actual documents where the information will be found; (2) affirm that the information sought in the interrogatory is in fact available in the specified records; (3) demonstrate that directly answering the interrogatory would impose a burden upon it; and (4) show that the burden of compiling the information is substantially the same for both parties." *Hege,* 8:10-CV-01578-GRA, 2011 WL 1119871, at *4 (D.S.C. Mar. 25, 2011). Discussed above in further detail with respect to each discovery request, *supra.* at 8-11, LVNV has satisfied the first two elements in producing approximately 37 pages of computer printouts that contain the relevant information requested by Plaintiff. Next, directly answering the interrogatory would impose a burden upon LVNV because it would be tasked with laboriously reproducing the same information that is clearly delineated in the computer printouts. The cost of reproducing this information is substantially the same for both parties because Plaintiff can easily glean the information he

requested by reading the documents. Requiring LVNV to reproduce this information in typed format would be a superfluous task that would impose an unneeded burden on LVNV. Accordingly, LVNV appropriately produced these documents under Rule 33(d), and Plaintiff's motion to compel should be denied.

### IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion for the entry of a protective order and deny Plaintiff's motion to compel.

Respectfully submitted,

/s/Adam C. Bach
ADAM C. BACH (#9877)
R. HUDSON SMITH (#12381)
Eller Tonnsen Bach
1306 S. Church Street
Greenville, South Carolina 29605
(864) 236-5013 (Office)
(864) 312-4191 (Fax)
Email: abach@etblawfirm.com

*Attorneys for Defendants*

November 7, 2016

Greenville, South Carolina